IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| HERNAN CALDERON, | ) | |
| | ) | No. 41216-4-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR & | ) | UNPUBLISHED OPINION |
| INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, C.J. — Hernan Calderon appeals the Benton County Superior Court's

order affirming the Board of Industrial Insurance Appeals' (Board) decision in his

workers' compensation claim. The Board determined that Calderon's industrial injury

proximately caused only a concussion and a cervical sprain/strain, and it further

determined the injury did not proximately cause or aggravate Calderon's preexisting

cervical degenerative disc disease, cervical facet disease, or cervical disc displacement.

On appeal, Calderon assigns error to three findings: (1) that the cervical

degenerative disc disease, cervical facet disease, and cervical disc displacement were not

proximately caused or aggravated by the industrial injury, (2) that the claim-related

conditions were fixed and stable and not in need of further proper and necessary

treatment, and (3) that he did not have a permanent partial disability proximately caused

by the industrial injury. In essence, Calderon argues these findings are not supported by substantial evidence and contends the court failed to give special consideration to the testimony of his attending provider. Calderon also requests an award of attorney fees under RCW 51.52.130 should he prevail on appeal.

We reject Calderon's arguments and affirm. Substantial evidence supports the challenged findings, and the court expressly acknowledged its obligation to give the attending provider's testimony special consideration. Because Calderon does not prevail and obtain relief, we decline to award attorney fees under RCW 51.52.130.

BACKGROUND

In October 2018, while working at a potato processing plant, Hernan Calderon slipped on a wet floor and fell backward, hitting his head and other parts of his body on a metal pole. Calderon went to the emergency room, where a neurological examination returned normal results. Computed tomography (CT) scans of Calderon's head and neck showed no acute fractures or trauma.

After the injury, Calderon experienced headaches, dizziness, sleepiness, and nausea. In the months following the injury, Calderon developed neck pain and numbness throughout his left arm and legs. Calderon was ultimately diagnosed with a concussion and a cervical sprain/strain.

Calderon then filed a workers' compensation claim with the Department of Labor and Industries (Department), which the Department initially allowed. In January 2019, a

magnetic resonance imaging (MRI) of Calderon's cervical spine showed a small disc protrusion at C4-5 and a broad-based disc protrusion at C5-6 that did not touch or displace the spinal cord. A second MRI of Calderon's cervical spine in July 2020 showed no change from the earlier imaging.

In October 2020, Calderon received a cervical epidural steroid injection[1] from a neurologist to treat his pain. The injection relieved Calderon's pain for approximately one week.

Later in October 2020, Calderon began treatment with a Certified Physician's Assistant (PA-C), Kai Jones. Calderon saw PA-C Jones twice. CP at 89, 91. During Calderon's first visit, he complained about neck pain and pain going down his left arm. PA-C Jones conducted a physical examination and found cervical tenderness at C5 and C7 and a positive Spurling's maneuver.[2] PA-C Jones diagnosed a cervical strain that he believed was caused or aggravated by the industrial injury. PA-C Jones also noted Calderon had post-concussive symptoms after the injury but believed those symptoms had resolved by the time of the examination. PA-C Jones released Calderon to work without restrictions.

---

[1] This type of procedure involves injecting an anesthetic and steroid into the low back at the emerging nerve root to relieve pain.

[2] This test identifies cervical disc or lateral nerve root compression.

PA-C Jones reviewed Calderon's MRI results and described them as showing a disc bulge abutting, but not compressing, the spinal cord. Regarding the MRI results, PA-C Jones opined that the bulging disc abutting the cord meant it was touching a nerve and causing some pain. PA-C Jones opined that the disc bulge—also referred to as cervical disc displacement—was related to Calderon's industrial injury. PA-C Jones distinguished that condition from cervical degenerative disc disease and cervical facet disease, which he believed were age-related and not caused or aggravated by the industrial injury. PA-C Jones also opined Calderon needed further treatment for the cervical disc displacement, including additional injections and potentially a surgical evaluation.

In December 2020, Calderon attended an independent medical examination conducted by board-certified neurologist Kenneth Brait, MD and board-certified orthopedic surgeon Steven Nadler, MD. The examination was conducted, in part, to review PA-C Jones' new diagnoses including cervical degenerative disc disease and cervical facet disease.

Dr. Brait performed a neurological examination that returned normal results, without motor or sensory abnormalities or reflex issues. Dr. Nadler performed an orthopedic examination and found no abnormalities in Calderon's spine other than subjective cervical tenderness. Drs. Brait and Nadler concluded the only diagnoses related to the industrial injury were a concussion (that had resolved) and a cervical

4

strain/sprain. The doctors also concurred in their conclusions that: the cervical degenerative disc disease was unrelated to the industrial injury; the cervical facet disease was a preexisting degenerative condition unrelated to the industrial injury; and the cervical disc displacement was a degenerative and age-related condition unrelated to the industrial injury. Dr. Nadler also testified that the preexisting conditions were not "lit up" by the industrial injury.

Dr. Brait testified that the bulging discs shown on Calderon's MRIs were attributable to degenerative processes and arthritic changes associated with aging. Dr. Brait added that cervical disc displacement is common and can be asymptomatic, and he opined Calderon's disc bulge was not near the nerve roots and would therefore not be the cause of Calderon's symptoms.

Regarding treatment, Dr. Nadler opined Calderon did not require further treatment for the conditions. Dr. Brait testified epidural injections are not curative and generally provide only temporary, palliative relief.

*Department Proceedings*

The Department considered whether Calderon's industrial injury caused or aggravated cervical degenerative disc disease, cervical facet disease, and disc displacement and later issued an order denying responsibility for those conditions. The Department also determined Calderon no longer required treatment, had no permanent partial disability, and closed the claim.

*Board Proceedings*

Calderon appealed the Department's orders to the Board. An Industrial Appeals Judge (IAJ) considered the testimony of Calderon, PA-C Jones, Dr. Brait, and Dr. Nadler and subsequently issued a Proposed Decision and Order affirming the Department's order. The IAJ found that Calderon's cervical degenerative disc disease, cervical facet disease, and cervical disc displacement were not proximately caused or aggravated by his industrial injury and there was insufficient evidence to show Calderon had a permanent partial disability proximately caused by the industrial injury.

Calderon petitioned the Board for review of the IAJ's Proposed Decision and Order. The Board affirmed, entering the following findings relevant to this appeal:

2. Hernan A. Calderon sustained an industrial injury on October 19, 2018, when he slipped and fell and hit his head against a metal pole. The injury proximately caused a concussion without loss of consciousness and a cervical sprain/strain.

3. The October 19, 2018 industrial injury did not proximately cause or aggravate Mr. Calderon's cervical degenerative disc disease, cervical facet disease, and/or cervical disc displacement.

4. As of June 4, 2021, Mr. Calderon's conditions proximately caused by the October 19, 2018 industrial injury were fixed and stable and not in need of further proper and necessary treatment.

5. As of June 4, 2021, Mr. Calderon's cervical condition proximately caused by the October 19, 2018 industrial injury was consistent with Category 1 of WAC 296-20-240, categories of cervical and cervico-dorsal impairments.

6. On June 4, 2021, Mr. Calderon did not have a permanent partial disability proximately caused by the industrial injury.

Clerk's Papers at 9.

*Superior Court Proceedings*

Calderon then appealed the Board's decision to the Benton County Superior Court. Following a hearing on the appeal, the court took the matter under advisement and later entered a letter decision and written order containing its findings and conclusions. The court ultimately affirmed the Board's decision, adopting the Board's findings above. In its letter decision, the court also acknowledged that it was required to give special consideration to the attending provider when making its decision.

Calderon appeals.

## ANALYSIS

1. CHALLENGED FINDINGS OF FACT

Calderon assigns error to the trial court's findings that: (1) the cervical disc disease, cervical facet disease, and cervical disc displacement were not proximately caused or aggravated by the industrial injury, (2) Calderon did not need further necessary and proper treatment for the conditions proximately caused by the industrial injury, and (3) Calderon did not have a permanent partial disability proximately caused by the industrial injury.

Contrary to those findings, Calderon argues: the cervical disc displacement condition was proximately caused or aggravated by the injury, he needs further necessary and proper treatment for the conditions caused by the injury, and he has a permanent partial disability proximately caused by the industrial injury. He also argues the trial court should have given PA-C Jones' testimony special consideration, as he was Calderon's attending provider. In response, the Department contends substantial evidence supports the trial court's findings and the court properly gave special consideration to PA-C Jones' testimony. We agree with the Department.

### A. Standard of Review

A worker aggrieved by a Department decision on a worker's compensation claim may appeal to the Board. RCW 51.52.060(1)(a), .050(2)(a). Board decisions may then be appealed to the superior court, which reviews the Board's decision de novo. RCW 51.52.110, .115; *Grimes v. Lakeside Indus.*, 78 Wn. App. 554, 560, 897 P.2d 431 (1995). The findings and decision of the Board are presumed correct until the superior court finds otherwise by a preponderance of the evidence. *Dep't of Lab. & Indus. v. Moser*, 35 Wn. App. 204, 208, 665 P.2d 926 (1983).

The superior court's decision may then be appealed to this court. RCW 51.52.140. On appeal, we review whether the superior court's findings are supported by substantial evidence and whether those findings support the conclusions of law. *Du Pont v. Dep't of Lab. & Indus.*, 46 Wn. App. 471, 476-77, 730 P.2d 1345 (1986). "Substantial evidence"

8

is evidence sufficient to persuade a rational, fair-minded person that the finding is true.

*Cantu v. Dep't of Lab. & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012).

Unchallenged findings are verities on appeal. *Davis v. Dep't of Lab. & Indus.*, 94 Wn.2d

119, 123, 615 P.2d 1279 (1980). When, as occurred in this case, the trial court prepares a

memorandum opinion, we consider that as a supplement to its formal findings and

conclusions. *Zavala v. Twin City Foods*, 185 Wn. App. 838, 859, 343 P.3d 761 (2015).

As part of our review, we do not substitute our judgment for that of the trial court,

nor do we weigh the evidence or the credibility of witnesses. *Davis*, 94 Wn.2d at 124.

"We review the record in the light most favorable to the party who prevailed in superior

court." *Hendrickson v. Dep't of Lab. & Indus.*, 2 Wn. App. 2d 343, 352, 409 P.3d 1162

(2018).

### B. Legal Principles

"An injury is compensable under the [Industrial Insurance Act, Title 51 RCW] if it

occurs in the course of employment and a causal relationship between the injury and the

condition for which compensation is sought is established by sufficient medical

testimony." *Goyne v. Quincy-Columbia Basin Irr. Dist.*, 80 Wn. App. 676, 682, 910 P.2d

1321 (1996) (citing *Sawyer v. Dep't of Lab. & Indus.*, 48 Wn.2d 761, 296 P.2d 706

(1956)). "To prove causation, the claimant's medical experts must establish that it is

'more probable than not that the industrial injury caused the subsequent disability.'"

*Loushin v. ITT Rayonier*, 84 Wn. App. 113, 122, 924 P.2d 953 (1996) (quoting *Zipp v.*

9

*Seattle Sch. Dist. No. 1*, 36 Wn. App. 598, 601, 676 P.2d 538 (1984)). "For an aggravation claim, medical testimony must establish, more probably than not, that the worsening of [a preexisting] condition is causally related to the industrial injury." *Id.* at 122.

Under WAC 296-20-01002(1), in the definition section of "proper and necessary," "the [D]epartment . . . pays for [only] proper and necessary health care services that are related to the diagnosis and treatment of an accepted condition" accepted under their claim. Under WAC 296-20-01002(2)(b), "proper and necessary" means, in part, "healthcare services that are . . . [c]urative or rehabilitative. . . . Curative treatment produces permanent changes, which eliminate or lessen the clinical effects of an accepted condition. Rehabilitative treatment allows an injured or ill worker to regain functional activity in the presence of an interfering accepted condition. Curative and rehabilitative care produce long-term changes."

Under WAC 296-20-01002(3) "[t]he department . . . stops payment for health care services once a worker reaches a state of maximum medical improvement. Maximum medical improvement occurs when no fundamental or marked change in an accepted condition can be expected, with or without treatment. 'Maximum medical improvement' is equivalent to 'fixed and stable.'" Once a worker's condition is fixed and stable, they may qualify for a disability award. *See* WAC 296-20-19000.

C. *Analysis*

Calderon's arguments on appeal largely amount to a request that this court
reweigh the competing medical testimony and credit PA-C Jones over the Department's
medical experts. But we do not weigh evidence or assess witness credibility on appeal.
*Davis*, 94 Wn.2d at 124. Rather, our task is limited to determining whether substantial
evidence supports the challenged findings and whether those findings support the
conclusions of law. *Du Pont*, 46 Wn. App. at 476-77. In this case we conclude that
substantial evidence supports the challenged findings.

First, substantial evidence supports the trial court's finding that the cervical disc
disease, cervical facet disease, and cervical disc displacement were not proximately
caused or aggravated by the industrial injury. Based on their examinations of Calderon,
Drs. Brait and Nadler opined that Calderon's cervical degenerative disc disease was
unrelated to the industrial injury; his cervical facet disease was a preexisting degenerative
condition unrelated to the industrial injury; and his cervical disc displacement was a
degenerative and age-related condition unrelated to the industrial injury. This evidence is

enough to persuade a rational, fair-minded person that the trial court's finding is true.

Thus, substantial evidence supports the finding.[3]

Second, substantial evidence supports the trial court's finding that Calderon did not need further necessary and proper treatment for the conditions proximately caused by the industrial injury. PA-C Jones and Drs. Brait and Nadler collectively opined that the only conditions caused by Calderon's industrial injury were a concussion and a cervical sprain/strain. Dr. Nadler opined Calderon did not require further treatment for those conditions. And the only condition PA-C Jones recommended treatment for was cervical disc displacement.

---

[3] Related to this finding, the Department contends that Calderon raises a new causation theory on appeal, specifically that the industrial injury "lit up" the cervical disc displacement. Resp't's Br. at 29 (citing Appellant's Br. at 11).

"[W]here a sudden injury 'lights up' a quiescent infirmity or weakened physical condition occasioned by disease, the resulting disability is attributable to the injury and compensation is awardable." *Dennis v. Dep't of Lab. & Indus.*, 109 Wn.2d 467, 472, 745 P.2d 1295 (1987).

Other than a single mention of the "lighting up" theory in his opening brief, Calderon does not mention or elaborate on it. *See* Appellant's Br. 6-19. To the extent he intends the sole mention of this theory to be construed as an argument on appeal, we decline to review it because he waived the issue. He did not raise the lighting up theory before the Board nor in his petition for review of the Board's decision. A party waives an issue by failing to raise it before the Board. *Leuluaialii v. Dep't of Lab. & Indus.*, 169 Wn. App. 672, 684, 279 P.3d 515 (2012) (citing RCW 51.52.104); *see also Ruse v. Dep't of Lab. & Indus.*, 138 Wn.2d 1, 8, 977 P.2d 570 (1999) ("An appellate court should not address an issue upon which the Department did not rely in denying the claim.").

As discussed above, substantial evidence supports the finding that Calderon's industrial injury did not cause or aggravate the cervical disc displacement condition. Because that condition was not related to the industrial injury, Calderon was not entitled to treatment for it. *See* WAC 296-20-01002 (the Department pays for only "proper and necessary" health care services that are related to the diagnosis and treatment of a condition accepted under their claim).

Moreover, even if we consider whether the proposed treatment was "proper and necessary," substantial evidence supports the finding that Calderon did not require additional treatment. The only treatment PA-C Jones recommended for the cervical disc displacement condition—additional epidural injections—was not proper and necessary because it was not curative nor rehabilitative.

Calderon testified that after he received the injection, his pain was relieved for only one week. PA-C Jones similarly testified that Calderon showed little improvement after the injection. Dr. Brait testified that epidural injections are not curative and generally provide only temporary, palliative relief. This evidence does not show that the injection would "produce long-term changes" as WAC 296-20-01002 requires to be considered a curative or rehabilitative treatment. This evidence is therefore sufficient to persuade a rational, fair-minded person that Calderon did not require further proper and necessary treatment for the conditions proximately caused by the industrial injury. Thus, substantial evidence supports the trial court's finding.

13

Third, substantial evidence supports the trial court's finding that Calderon did not have a permanent partial disability proximately caused by the industrial injury. The trial court adopted the Board's finding that Calderon's cervical condition caused by the industrial injury fell within Category 1 under WAC 296-20-240, and that he therefore did not have a ratable permanent partial disability proximately caused by the industrial injury.

WAC 296-20-240 governs the categories of impairment ratings for cervical and cervical-dorsal impairments. A Category 1 rating means no objective clinical findings of cervical or cervical-dorsal impairment are present. *See* WAC 296-20-240(1); *accord* WAC 296-20-680(1) (a Category 1 rating means zero percent total body impairment).

Dr. Nadler rated Calderon's permanent impairment as Category 1 based on the cervical sprain/strain. Drs. Brait and Nadler also testified that Calderon had no objective findings of neurological or orthopedic issues based on their examinations of his cervical spine and neck area. This testimony is sufficient to persuade a rational, fair-minded person that Calderon did not have a ratable permanent impairment proximately caused by the industrial injury. Substantial evidence therefore supports the finding.

Calderon suggests the trial court should have found a Category 2 rating. His argument misunderstands the standard of review. The question is not whether evidence could support a different finding; it is whether substantial evidence supports the finding the trial court made. *See Du Pont*, 46 Wn. App. at 476-77. As discussed above, the

14

court's finding is supported by substantial evidence. Calderon's request for a Category 2 rating invites this court to reweigh the evidence. We decline his invitation. *See Davis*, 94 Wn.2d at 124.

Relatedly, Calderon contends the trial court was required to give PA-C Jones' testimony special consideration as Calderon's attending provider.

It is a long-standing rule that courts should give special consideration to the opinion of a worker compensation claimant's attending physician. *Hamilton v. Dep't of Lab. & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988). This rule, however, does not require the fact finder to give more weight or credibility to the attending physician's testimony, but rather, to give it "careful thought." *Id.* at 572. If a court believes the testimony of an examining physician over that of the attending physician, it should indicate in its findings this "special consideration" rule and why the examining physician's testimony is preferable over the attending physician's testimony. *Groff v. Dep't of Lab. & Indus.*, 65 Wn.2d 35, 45, 395 P.2d 633 (1964).

As the Department points out, the trial court's letter decision acknowledged the court's obligation to give special consideration to the attending physician when reaching its decision. Moreover, Calderon fails to demonstrate that the trial court failed to comply with its obligation to give PA-C Jones' testimony special consideration. As a result, we conclude the trial court complied with its obligation to give the attending physician's testimony special consideration.

Substantial evidence supports the trial court's challenged findings, and the trial court properly gave special consideration to the attending physician in this case.

**2.  ATTORNEY FEES**

Calderon requests an award of reasonable attorney fees under RCW 51.52.130. We deny his request.

RCW 51.52.130(1) provides that, "[i]f, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary . . . a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court." "The statute allows the court to fix attorney fees if the court reverses the [Board]'s order and grants an award to the disabled worker." *Jenkins v. Weyerhaeuser Co.*, 143 Wn. App. 246, 257, 177 P.3d 180 (2008). "RCW 51.52.130 encompasses fees in both the superior and appellate courts when both courts review the matter." *Conner v. Harrison Med. Ctr.*, 11 Wn. App. 2d 467, 478, 454 P.3d 131 (2019).

Here, because we affirm the superior court's decision upholding the Board's final order, Calderon has not satisfied the prerequisite to obtain relief under RCW 51.52.130(1).  We therefore decline Calderon's request for attorney fees.

No. 41216-4-III
*Calderon v. Dep't of Lab. and Indus.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Cooney, J.